FILED
2012 May-08  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JEFF JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | Case No.  5:09-cv-155-AKK-TMP |
| | ) | |
| KIM THOMAS, Commissioner, | ) | |
| Alabama Department of Corrections; | ) | |
| LUTHER STRANGE, Attorney General of | ) | |
| the State of Alabama,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is an action filed by an Alabama state prisoner pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of a conviction he received in the Morgan County Circuit Court on August 10, 2001, for murder.  The petitioner, Jeff Jones, filed the instant petition for writ of *habeas corpus* with the assistance of counsel on January 26, 2009.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b), the matter was referred to the undersigned magistrate judge for a preliminary review and recommendation.

---

[1] The persons holding the offices of Commissioner of the Department of Corrections and the Attorney General of the State of Alabama have changed since the filing of this petition.  Pursuant to Fed.R.Civ.P. 25(d), the current officeholders have been substituted for their predecessors.

<u>Procedural History</u>

After a jury trial, the petitioner was found guilty of non-capital murder in violation of Alabama Code § 13A-6-2, in the Morgan County Circuit Court on August 10, 2001. As stated by the Alabama Court of Criminal Appeals in affirming the conviction, the facts of the crime were as follows:

> The State's evidence showed that the appellant was in the trucking business; that he and the victim, Howard Alexander, were involved in a business relationship whereby the victim leased trucks from the appellant; and that this relationship became strained because of the victim's alleged misuse of the appellant's trucks, [sic] and equipment and the victim's failure to pay for a leased pickup truck, which the appellant eventually had to repossess. The State's evidence further showed that the appellant decided to kill the victim and made preparations to do so; that he told several people, who subsequently testified for the State, that he intended to kill the victim; that, in making preparations, he sawed off the barrel of a 12 gauge shotgun and purchased shotgun shells, dark clothing, and camouflage paint from a Walmart store the day of the killing; that, on the day of the killing, he dressed in the dark clothing, smeared camouflage paint on his face, armed himself with the 12 gauge shotgun, got one of his employees to drive him to a location where he knew the victim would be, lay in wait for the victim in the darkness, and as the victim approached his (the victim's) automobile, shot him five times with the shotgun, killing him instantly; that the appellant, by prearrangement, had another employee pick him up at the scene and drive him to his apartment; and that he told several people, who subsequently testified for the State, that he had killed the victim. The State's evidence further showed that the appellant made an effort to hide the murder weapon; that he attempted to get several people to give false statements to the police in an effort to establish an alibi; and that he urged them to "blame it on the Mexicans." The State further established that the shotgun shells recovered at the murder scene had been fired from the appellant's shotgun and that the shells were identical to those that the appellant had purchased from Walmart the day of the killing.

(Doc. 6-13, Respondents' Ex. J, p. 2 of 7). Petitioner was sentenced to 35 years in prison on September 25, 2001. He filed an appeal raising three grounds for reversal: (1) the evidence was insufficient to support the murder conviction; (2) the trial court abused its discretion in denying his

request for an NCIC background check on two prosecution witnesses; and (3) the trial court erred by allowing into evidence a Mossberg shotgun as the purported murder weapon without a sufficient showing of a chain of custody.[2]  The Alabama Court of Criminal Appeals affirmed the conviction on May 24, 2002, *Jones v. State,* 860 So. 2d 915 (Ala. Crim. App. 2002) (Table), (Doc. 6-13, Respondents' Ex. J), and the Alabama Supreme Court denied a petition for writ of *certiorari* on November 8, 2002.  *Ex parte Jones*, 877 So. 2d 651 (Ala. 2002) (Table).

On April 23, 2003, petitioner filed his state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.  In it, he asserted five grounds for relief:

I.      The State violated appellant's constitutional rights by failing to disclose material, exculpatory and impeaching information, statements and evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972);

II.     Ineffective assistance of trial counsel;

III.    Newly discovered evidence exists requiring a new trial;

IV.     Appellant is actually and absolutely innocent of the crime for which he was convicted and his conviction results from a constitutional violation and is a miscarriage of justice;

V.      Whether the trial court abused its discretion and violated appellant's fourteenth amendment right to due process of law in denying appellant's well pleaded Rule 32 petition without affording him any opportunity to meet his burden of proof.

─────────────

[2]  Although the record supplied by the respondents does not include the petitioner's brief on direct appeal, these three issues are those addressed in both the State's direct-appeal brief (Doc. 6-12, Respondents' Ex. I) and the opinion of the Alabama Court of Criminal Appeals affirming the conviction.  (Doc. 6-13, Respondents' Ex. J).  In any event, these issues are not alleged in the instant action as grounds for habeas relief, nor do the respondents assert any procedural bar on the basis that petitioner failed to raise any current habeas claim on direct appeal.

(Doc. 6-6, Respondents' Exhibit B, p. 7 of 89). .

In a written order without an evidentiary hearing, the trial court denied the petition March 20, 2007. Petitioner appealed, and the Alabama Court of Criminal Appeals affirmed the denial of his Rule 32 petition on January 25, 2008. (Doc. 6-8, Respondents' Ex. D). In that order, the Alabama Court of Criminal Appeals adopted the findings of the trial court, saying the following:

> The appellant, Jeff Jones, appeals from the circuit court's dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P., in which he attacked his August 2001 conviction for murder and his resulting sentence of 35 years' imprisonment. On May 24, 2002, this Court affirmed Jones's conviction and sentence, by unpublished memorandum. *Jones v. State* (No. CR-01-0280), 860 So. 2d 915 (Ala. Crim. App. 2002)(table). A certificate of judgment was issued on November 8, 2002.

> On April 23, 2003, Jones filed his first Rule 32 petition wherein he argued: (1) that the State withheld exculpatory and impeaching statements and information from witnesses; (2) that he was denied effective assistance of trial counsel; (3) that he had newly discovered evidence in the form of favorable testimony from Eli Felton, Brian Walters, and Danine Owens; and (4) that he is innocent. On December 22, 2005, the State filed an answer wherein it argued that Jones's petition was both procedurally barred and without merit. On March 20, 2007, the circuit court issued a detailed order dismissing Jones's petition. This appeal followed.

> On appeal, Jones reasserts the claims he presented in his petition to the trial court and also raises several additional claims.

> On March 20, 2007, the circuit court issued an exhaustive order addressing each of Jones's sixteen allegations. (C. 7-33.) Here, the circuit court's findings of fact and conclusions of law are supported by the record. We adopt the court's order as part of our decision. Moreover, Jones has failed to provide a "clear and specific statements of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds," as required by Rule 32.6(b), Ala.R.Crim.P.; *Gilmore v. State*, 937 So. 2d 547, 550 (Ala. Crim. App. 2005). Pursuant to Rule 32.3, Ala.R.Crim.P., Jones has the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. *Marquette v. State*, 933 So. 2d 1110, 1112-13 (Ala. Crim. App. 2005). Jones's claim is nothing but bare a [sic] allegation unsupported by any specific facts.

4

Rule 32.7(d), Ala.R.Crim.P., authorizes the trial court to summarily dismiss a petitioner's Rule 32 petition:

> "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition."

See also *Hannon v. State*, 861 So. 2d 426, 427 (Ala. Crim. App. 3002); *Cogman v. State*, 852 So. 2d 191, 193 (Ala. Crim. App. 2002); *Tatum v. State*, 607 So. 2d 383, 384 (Ala. Crim. App. 1992).  As discussed above, Jones's claims are both procedurally barred and without merit.  Thus, summary disposition was appropriate.

Petitioner sought rehearing, which was overruled, and sought review in the Alabama Supreme Court, which was denied on April 11, 2008.  (Doc. 6-11, Respondents' Ex. G).

Petitioner filed the instant petition for writ of *habeas corpus* through counsel on January 26, 2009.  He raises the following claims:

(1) the State violated his constitutional right to due process by failing to disclose material exculpatory and impeaching information in violation of *Brady v. Maryland* and *Giglio v. United States*;

(2) the prosecution knowingly presented perjured testimony at trial;

(3) petitioner received ineffective assistance of counsel at trial in that his attorney: (a) failed to present exculpatory evidence through trial testimony of Greg Thrower, Ruby Crowder, and Bill Casey; (b) failed to obtain cell phone records from State's witness Dennis Eddy; (c) failed to view all of the State's evidence; (d) failed to interview State's witnesses Robert and Wendy Key; (e) failed to call Ruby Crowder as a witness to testify that she had been told that Dewey Paul said that Jones did not commit the crime; (f) failed to challenge ballistics evidence and offer expert testimony in favor of the defense; (g) failed to assert a *Brady* claim in the motion for new trial after receiving the pre-sentence report; (h) failed to request a jury instruction on the effect of a missing link in the chain of evidence; (i) failed to seek dismissal of the indictment when State's witness Michael Stewart failed to appear; (j) failed to challenge the arrest as illegal; (k) failed to preserve issues for direct

appeal; (l) failed to call Billy Casey as a witness to testify that Dewey Paul stated he knew Jones did not kill the victim; (m) failed to call forensic pathologist to develop favorable evidence regarding entry and exit wounds and the size of projectiles; (n) trial counsel was suffering from a psychological disorder which caused his performance to be deficient during trial; (o) trial counsel had a conflict of interest based upon threats he had received before trial from Dennis Eddy; (p) failed to pursue and protect petitioner's Sixth Amendment right to confrontation regarding witness Michael Stewart; (q) failed to move for a mistrial and make an adequate record regarding a weapons charge in Athens, Alabama;

(4) that newly-discovered evidence requires a new trial; and

(5) that petitioner is actually innocent of the crime for which he was convicted.


Pursuant to the court's order to show cause, the respondents filed an answer.  By order dated March 30, 2009, the court entered an order notifying the parties that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure under Rule 8 of the *Rules Governing Section 2254 Cases*.  Petitioner filed a reply to the answer through counsel on April 13, 2009.


### Discussion

### A.

The state appellate court concluded that the claims set forth in the Rule 32 petition were both procedurally barred and without merit.  Respondents do not argue procedural default as a defense in their answer and brief in this action.  ( Doc. 6, p. 29).  The court notes that to the extent the respondents' cursory mention of procedural default is sufficient to raise this as a defense, the procedural defaults they rely on are Rule 32.6(b) (lack of a factual basis) and Rule 32.7(d) (lack of specificity) and Rules 32.2(a)(2) and (4) (raised and addressed at trial and/or on appeal).  While the

latter of these remains a recognized basis for procedural default, the first two are now regarded as merits determinations, not procedural defaults.

Recent Eleventh Circuit precedent now holds that application of Rule 32.6(b) of the Alabama Rules of Criminal Procedure is not a procedural bar, but an analysis of the merits of a claim.  In *Powell v. Allen*, 602 F.3d 1263 (11th Cir. 2010), the court of appeals addressed a habeas claim that was rejected by the state courts because the petitioner (Powell) "failed to plead facts on which an ineffective assistance claim could be based and, for that reason, denied Powell's claim and request for an evidentiary hearing."  *Id.* at 1272, citing Ala. R. Crim. P. 32.6.  The court of appeals then explained the effect of this state-court ruling:

> We thus review the Rule 32 court's rejection of Powell's claim *as a holding on the merits*.  *Judd [v. Haley]*, 250 F.3d at 1313; *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997) (finding no procedural bar from state court ruling on similar pleading rule because the ruling "require[d] some evaluation, however cursory, of the merits of a petitioner's claim").

*Id.*, at 1272 [italics added].

That holding was even more recently reiterated and bolstered in *Borden v Allen*, 646 F.3d 785 (11th Cir. 2011).  Citing *Powell* and comparing Rule 32.6(b) to Rule 2 of the federal *Rules Governing Section 2254 Cases*, the Eleventh Circuit concluded that

> an Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review.  We therefore must review the merits determination of the Court of Criminal Appeals under the deferential standards set forth in AEDPA, discussed below.

7

*Borden v Allen*, 646 F.3d 785, 816 (11th Cir. 2011).  Analogizing further to a Rule 12(b)(6) motion

to dismiss under the *Federal Rules of Civil Procedure*, which is considered an adjudication "on the

merits," *see Federated Department Stores, Inc., v. Moitie*, 452 U.S. 392, 101 S. Ct. 2424, 69 L. Ed.

2d 103 (1981) (stating that dismissal under Rule 12(b)(6) is a "judgment on the merits"); *NAACP

v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (stating that a dismissal for failure to state a claim

under Rule 12(b)(6) is an adjudication on the merits for claim preclusion purposes), the court of

appeals treated the dismissal of a Rule 32 claim on the ground of insufficiently specific pleading as

addressing the merits of the claim as pleaded.  *Borden v Allen*, 646 F.3d 785, 816 (11th Cir. 2011).

The court also explicitly rejected the contrary language in the Eleventh Circuit's earlier unpublished

opinion in *Jenkins v. Bullard*, 210 Fed. Appx. 895, 900-901 (11th Cir. 2006) (unpublished), stating,

"As to the third part of the procedural default rule, Rules 32.3 and 32.6(b) have been firmly

established and regularly followed by the Alabama courts." *Id.*, at 808 n. 27.  The court then stated

its holding as follows:

> A ruling by an Alabama court under Rule 32.6(b) is also a ruling on the merits.  Here,
> the Alabama Court of Criminal Appeals, in disposing of claims in the Amended
> Petition under Rule 32.6(b), necessarily considered the sufficiency of such claims,
> focusing in on the factors for determining whether the petition presented a case
> sufficient to warrant relief under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984).  In short, the Alabama Rules of Criminal Procedure
> authorize summary dismissal of claims under Rule 32.7(d) for failure to fact plead
> with sufficient specificity as required by Rule 32.6(b) and the form petition, much as
> the § 2254 Rules and the § 2255 Rules permit summary dismissal of claims under
> Rule 4 for failure to fact plead under Rule 2 and the federal form petition.  Because
> such dismissals under the federal rules constitute rulings on the merits, we hold that
> a summary dismissal of a federal claim by Alabama courts for failure to comply with
> Rule 32.6(b) is similarly a ruling on the merits.

*Id.*, at 812-813; *see also Frazier v. Bouchard*, 661 F.3d 519, 525 (11th Cir. 2011).

Thus, for purposes of this court's review of Jones's claims, every instance in which the Alabama courts determined that his Rule 32 petition failed to plead a claim with sufficient specificity under Rule 32.6(b) will be treated as an adjudication on the merits of the claim, not a procedural default.  How that adjudication is assessed in light of the deference to state-court resolution of claims, required by AEDPA, will be discussed below with respect to each claim in which it becomes an issue.

B.

Rather than relying on procedural default, respondents concentrate on the merits of the claims and the burden set out in 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Title 28 U.S.C. § 2254(e)(1) further provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

9

Although these two provisions often are found together, the court notes that they are not the same. The former requires an "adjudication" on the merits of a claim, while the latter is concerned more broadly with findings of fact made by state courts. The Eleventh Circuit explained in *Kearse v. Secretary, Florida Dept. of Corrections*, 669 F.3d 1197 (11th Cir. 2011):

> AEDPA further requires federal courts to defer to a state court's determination of a factual issue, though it permits a petitioner to rebut those determinations by clear and convincing evidence. *Id*. § 2254(e)(1). This is not the same as § 2254(d), which prohibits a federal court from *granting habeas relief* unless the state court's *adjudication of a claim* resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d)(1)-(2).

*Id.* at 1198 (italics in original). At issue in *Kearse* was a finding of fact by the state courts that petitioner failed to file his state post-conviction petition by a certain time. The court of appeals reversed the district court's reliance on § 2254(d) as a basis for finding that the determination made by the state court was not contrary to or an unreasonable application of federal law. Rather, the Eleventh Circuit held, the question on such a finding of fact is whether the petitioner can rebut the finding by clear and convincing evidence. Although "[t]his presumption of correctness applies both to findings of fact made by the state trial court as well as the state appellate court," *Dill v. Allen*, 488 F.3d 1344, 1354, (11th Cir. 2007), *citing*, *Bui v. Haley,* 321 F.3d 1304, 1312 (11th Cir. 2003), it is subject to rebuttal by the petitioner upon clear and convincing evidence.

With regard to adjudication of claims under § 2254(d), the United States Supreme Court discussed the "contrary to" and "unreasonable application" phrases of § 2254(d) in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) :

10

A state-court decision will . . . be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

. . . .

[A] state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. . . .

A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision "involv[ing] an unreasonable application of . . . clearly established Federal law."

. . . .

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.

. . . .

[U]nder § 2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

. . . .

11

> [T]he phrase "clearly established Federal law"] refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.

529 U.S. at 405-12, 120 S.Ct. at 1519-23.  It is petitioner's burden to show that the state court applied a United States Supreme Court case to the facts of his case in an objectively unreasonable manner.  *Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002).

> [Section] 2254(d) dictates a "'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

*Bell v. Cone*, 543 U.S.447, 125 S.Ct. 847, 853, 160 L.Ed.2d 881 (2005).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004).

A state court's decision is not contrary to clearly established law simply because it did not cite United States Supreme Court opinions "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

12

C.

The prosecutorial misconduct claims raised in Claim 1 (*Brady* violation) and Claim 2 (perjured testimony) are somewhat interrelated.  Petitioner argues that a narrative of the evidence contained in the presentence report necessarily implies that the several witnesses must have made statements to police different from what they testified to at trial, or which were otherwise exculpatory of the petitioner, or could be used to impeach the witnesses' own trial testimony.  This suggests not only the existence of undisclosed witness statements, but also that the prosecution knew that the trial testimony of some witnesses was false.

1.      *Claim 1 – the Brady/Giglio Claim*

Claim 1 was addressed by the trial court, and it findings adopted by the state appellate court, in the following manner:

> As the Court understands [Claim One], its essence is that the Decatur Police Department investigators and/or the District Attorney failed to disclose the alleged exculpatory or impeaching statements that they had obtained from various witnesses interviewed after the crime, including Kelly King, Joel Tate McLean, Danine Owen, Teri Henry, Dewey Paul, Bill Casey and Tammy Witcher.  Based on his interpretation of the Probation Officer's lengthy narrative about the offense set forth in his Presentence Report, the petitioner contends that these persons gave written or verbal statements that are exculpatory or that provide exculpatory or impeaching information.  Having reviewed the Presentence Report and other records submitted by the petitioner in connection with Claim 1, and the trial transcript of those witnesses who testified at trial, the Court finds no support for his argument for several reasons.
>
> First, a Presentence Report is required as an aid to the Court in making sentencing and probation decisions.  It is not admissible as evidence in any proceedings that bears on the guilt or innocence of a defendant.  Rule 26.5, ARCrP.  Similarly, the manner in which a

13

Presentence Report is prepared or presented does not make it an authoritative source for determining whether or not the State had provided exculpatory or impeaching information to the defendant's attorney. Nor does a Presentence Report necessarily confirm that persons named as witnesses gave verbal statements that were recorded in writing or otherwise or signed their own written statements.

Second, even if each person named by the petitioner, except Dewey Paul, made a written statement or gave a recorded verbal statement, he has no firsthand knowledge about what statements his trial attorney received or did not receive from the investigators and/or prosecutor. During pretrial proceedings the petitioner's counsel expressed his feeling that he had received copies of all statements with the exception of a possible written statement signed by Dewey Paul.

Third, during the preliminary hearing, Investigator Hamilton disclosed in his testimony the substance of statements taken from various witnesses, including some of those named above, and also revealed that one witness had given conflicting statements.

Fourth, the information allegedly obtained by police during their investigation from Kelly King, Joel McLean, Danine Owen, Teri Henry, Bill Casey and Tammy Witcher was not exculpatory by any reasonable interpretation. It appears that some of these persons had no firsthand knowledge that would help either the State or the defense. Others gave detailed information that had one tendency only – to implicate the petitioner as the murderer. Any inconsistencies between one person's alleged statement and his or her trial testimony were minor and immaterial.

Finally, regarding pretrial statements of Dewey Paul, the prosecution represented to the Court and the petitioner's counsel before the trial began that the State had no written statements of this witness. Except for his assumptions derived from his interpretation of the Presentence Report, the petitioner has no proof to the contrary. While Paul testified that he believed he made or gave a written statement, his uncertain recollection does not necessarily mean that he, in fact, gave a signed written statement to the police. Moreover, the defendant's attorney knew before trial from his private investigator that Paul had made several inconsistent or contradictory statements. He effectively

14

cross-examined Paul about his untruthful statements, which the witness admitted.  Petitioner's counsel also admitted into evidence as Defendant's Exhibit 5 a favorable written statement of Paul.

The petitioner's reliance on the Presentence Report as supplying actual witness statements given to the State is misplaced.  His argument in Claim 1 of constitutional violations is based on assumptions and his own conclusions that have no foundation in fact or law.  This claim warrants no further proceedings and is due to be dismissed.

(Respondent's Exhibit A, C. 10-13).  The findings of fact made by the state trial court are accorded a presumption of correctness, unless rebutted by the petitioner's "clear and convincing evidence" to the contrary.  Also, the merits resolution of the *Brady/Giglio* claim reached by the state court prevents the granting of habeas relief, unless it is "contrary to" or "an unreasonable application of" Supreme Court precedent.

By the court's count, petitioner alleges, under the single rubric of the his *Brady/Giglio* claim, 24 separate pieces of allegedly exculpatory or impeaching evidence[3] he contends were suppressed by the prosecution.  The state courts correctly observe that, other than the presentence investigation report prepared by the probation officer for sentencing, there is no evidence that these pieces of information actually exist.  Reading the factual narrative of the offense contained in the presentence

_____

[3]  Many of these pieces of evidence are clearly not even evidence.  For example, petitioner asserts the fact that police did not believe the initial story told by Dennis Eddy after the murder is itself impeaching evidence.  (*See* Petition, pp. 11-12).  Similarly, he points out that police wanted to interview Eddy and that they interviewed Billy Casey without asking why he left the King house hastily before the shooting. But these are nothing more than investigative *suspicions* (or mistakes) police acted upon while carrying out the investigation.  The fact that police suspected someone or wanted to talk to some witness is not itself evidence that is either exculpatory of the petitioner or impeaching of the witnesses.

investigation report, petitioner speculates that such evidence *must* have existed because of perceived inaccuracies or differences in the report from the testimony at trial.[4]  The court agrees with the state courts that petitioner has offered no "clear and convincing evidence" from which it can be inferred that police were in possession of exculpatory or impeaching information that was not disclosed to him or his trial counsel.  The Alabama Court of Criminal Appeals was correct when it characterized this claim as a "bare allegation" unsupported by specific facts.

Even assuming that some of these "statements" actually existed, almost all of them were either known to petitioner and counsel (or were public and could have been known), or they simply are not exculpatory or impeaching of the witnesses at trial.  In *Youngblood v. West Virginia*,  547 U.S. 867, 869-870, 126 S.Ct. 2188, 2190 (2006), the United States Supreme Court gave an overview of what is required to prove a *Brady* violation:

> A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. See 373 U.S., at 87, 83 S.Ct. 1194. This Court has held that the *Brady* duty extends to impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and *Brady* suppression occurs when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor," *Kyles*, 514 U.S., at 438, 115 S.Ct. 1555. *See id.*, at 437, 115 S.Ct. 1555 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,' " *Strickler v. Greene*, 527 U.S. 263, 280,

---

[4]  This case is not like many reported *Brady/Giglio* cases where, after the conviction, actual witness statements or information not disclosed by the prosecution comes to light.  Here, petitioner offers only speculation that such statements or information must exist because the narrative in the presentence investigation report varies (according to petitioner) from the trial testimony.

16

119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Bagley, supra*, at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.)), although a "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," *Kyles*, 514 U.S., at 434, 115 S.Ct. 1555. The reversal of a conviction is required upon a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.*, at 435, 115 S.Ct. 1555.

First, many of the statements noted by petitioner were known to him and his attorney at trial. The state trial court's order correctly points out that Investigator Hamilton testified at a preliminary hearing to the various statements made by Dennis Eddy, Danine Owen, Joyce Thompson,[5] Kelly King, and Jenny Eddy. These statements were not suppressed. He specifically testified that Danine Owens made two statements, only in the second of which did she state that she saw the petitioner and another man with guns immediately after the killing. He also testified to the fact that it was Michael Stewart who delivered the two shotguns to police a couple of weeks after the murder. The fact that Stewart had been indicted for felonies was known to defense counsel as he questioned Hamilton about it during the preliminary hearing. Although petitioner argues that police interviewed Dewey Paul several times, but failed to produce any written statements from him, the record is clear

---

[5] Petitioner makes much out of the purported differences between Joyce Thompson's trial testimony and what Investigator Hamilton reported as her statement during the preliminary hearing. At the preliminary hearing Hamilton said that Thompson said she saw a small red truck with two while males in it on the night of the murder, and that she got the tag number for the truck. The truck was registered to a "Thrower." At trial, Thompson testified that she saw a small red truck and got the tag number, but that she could only tell there were two people in it. She could not tell whether the truck occupants were male or white. If anything, Thompson's trial testimony was more exculpatory than the purported statement to police in that it failed to provide a description of the occupants of the truck. In any event, petitioner was aware of the discrepancy and could cross-examine her about it at trial.

17

that Paul's first and only signed statement, which was favorable to petitioner, was produced to petitioner and introduced at trial. There is no evidence of other exculpatory statements by him.

The remaining instances alleged by petitioner simply do not involve materially exculpatory or impeaching evidence. For instance, whether the victim was shot "after he went to ground," says nothing about whether petitioner was the shooter. Likewise, whether drugs were or were not found in the victim's car raises no doubt about the petitioner as the murderer. The same is true of many of the allegedly suppressed statements of the witnesses; they simply are not material to the guilt of the petitioner or the credibility of the witness.

As to Claim 1, petitioner simply has not shown any "clear and convincing evidence" that any exculpatory or impeaching information known to police was hidden from him. He speculates, but proves nothing. Moreover, even petitioner's speculations fail to show that any such suppressed statements by witnesses were of such material exculpatory or impeaching value that the resolution of this claim reached by the state courts was contrary to or an unreasonable application of *Brady* or *Giglio*. Without such a showing, § 2254(d) precludes granting habeas relief on this claim.

2.      *Claim 2 – the Perjured Testimony Claim*

In order for perjury to constitute grounds for the granting of habeas relief, petitioner must show that certain testimony (1) was used by the state, (2) was false, (3) was known by the state to be false, and (4) was material to the guilty or innocence of the defendant. *Giglio v. United States*, 405 U.S. 150 (1972). *See also*, *United States v. Agurs*, 427 U.S. 97, 103-04 (1976); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) ("[F]or perjury by a witness to constitute grounds for relief

18

appellant would have to show that the Government knowingly used the perjured testimony."). "Error may occur when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury.'" *Boyd v. Allen*, 592 F.3d 1274, 1307 (11th Cir. 2010), quoting *Ventura v. Attorney General of Florida*, 419 F.3d 1269, 1277 (11th Cir. 2005).

The materiality standard used to assess knowingly-presented false testimony is essentially akin to harmless error.  The Eleventh Circuit has explained:

> Pursuant to *Giglio*, false testimony is material "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)).  Our cases have indicated that the standard is analogous to the "harmless beyond reasonable doubt" standard of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).  *Carr v. Schofield*, 364 F.3d 1246, 1255 (11th Cir. 2004); *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995); *United States v. Rivera Pedin*, 861 F.2d 1522, 1529 n. 13 (11th Cir. 1988).  In other words, if there is a reasonable doubt about the effect of the false testimony on the jury verdict, then it may be that there is a reasonable likelihood that the false testimony could have affected the verdict.

*Occhicone v. Crosby,* 455 F.3d 1306, 1309 (11th Cir. 2006).  The court elaborated further, "Stated another way, this may be merely an elaboration of the meaning of the *Giglio* standard — whether there is 'any reasonable likelihood [that the false testimony could] have affected the judgment of the jury.'" *Id.* at 1309 n. 2.  *See also Boyd v. Allen*, 592 F.3d 1274, 1307 (11th Cir. 2010).

In this case, petitioner contends that there were three instances of false testimony given during his trial, which went uncorrected by the prosecution.  First, he asserts that witness Joyce

19

Thompson gave perjured testimony when she stated that she could not describe the occupants of the red truck seen by her the night of the murder.  He points out that Investigator Hamilton testified at the preliminary hearing that Thompson had said the truck was occupied by two white males.  Second, he notes that Dewey Paul testified at trial that he was driving Dennis Eddy's pickup truck when he picked up the petitioner after the shooting, although the presentence investigation report says Paul was driving petitioner's red Camaro the night of the murder.  Finally, petitioner also points out that Dewey Paul's trial version of where he picked up petitioner after the murder differs from the account given in the presentence investigation report.  Having carefully reviewed the testimony of the witnesses, the evidence simply does not establish that this testimony was false at all, or that the prosecution had any reason to suspect it was false.

Ms. Thompson testified at trial that she could not tell whether the occupants of the red pickup truck were male or white, only that there were two occupants.  At the preliminary hearing, however, Investigator Hamilton testified that an "unidentified lady" told them that the vehicle had been occupied by two white males, one larger and one smaller.[6]  This discrepancy, however, is far from proof of perjury by Ms. Thompson.  First, there is no direct discrepancy in the sense that Ms. Thompson herself has *testified* in two different ways.  Petitioner is attempting to compare her trial testimony with Investigator Hamilton's recollection of statements she made to him.  His recollection may be faulty, or Ms. Thompson's trial testimony may more accurately reflect her uncertainty of

---

[6]  Petitioner contends this discrepancy is important because the prosecution's theory of the case involved petitioner's face being painted black with camouflage makeup, making it impossible for the witness to have said the truck was occupied by "white" males.  He contends the witness changed her testimony to make it consistent with the prosecution theory of the case.

20

what she actually saw in the red pickup truck. It simply does not prove that she lied during her trial testimony. The importance of her testimony lay in the fact that she described a small red truck, missing its tailgate, and that she obtained a tag number for it. Even taking into account the discrepancy, at no time did Ms. Thompson claim to be able to *identify* the people in the truck, only that there were two people in it. This bolstered and confirmed Dennis Eddy's testimony that he and petitioner used the truck to drive to the location of the shooting, where petitioner, armed with two shotguns and pistol, was dropped off. Because this discrepancy fails to establish any perjury, this claim is meritless.

Petitioner points to two bits of testimony by Dewey Paul as indicative of perjury by Paul. At trial, Paul testified that he borrowed Dennis Eddy's Mazda truck (the same as seen by Ms. Thompson) to go pick up petitioner after the shooting. He testified as follows:

Q:     And then when that conversation [with Kelly King] ended, how long was it before Jeff called you?

A:     Uh, it was — it was a few minutes because I borrowed Dennis's truck because the car I was driving didn't have no headlights, and I got up on [Highway] 67 and was headed towards Jimmy's when Jeff called me.

* * *

Q:     Where did he tell you to go?

A:     On Old Moulton. When you turn off [Highway] 67, there's a Texaco right there on the corner. Then I go down to another house and there's a dump truck there. Right there.

* * *

Q:     Where was that dump truck in relation to that house [where the shooting occurred]?

21

A:      If you come out of her driveway on McEntire and take a left and go down to Old Moulton Road and take a left, then you go down a quarter of a mile maybe.  It's down there on the left.

Q:      Would that be between McEntire and the Beltline or the other way?

A:      Yeah.  Between McEntire and the Beltline.

(Doc. 6-4, Trial Transcript, pp. 333-334).  By contrast, the presentence investigation report states that Paul was driving a red Camaro owned by petitioner, and that he picked up the petitioner after the shooting at the intersection of "Old Moulton Road and Moadus Road."  (Doc. 9-4, p. 10 of 98).

Petitioner contends these points are important to show that Dewey Paul was lying in his trial testimony.  First, he asserts that the reference to the red Camaro in the presentence report must show that Paul made such a statement to police early in the investigation, but changed his trial testimony.  This can be used to impeach Paul's credibility.[7]  Second, he argues that because it appears in the presentence investigation report, Paul must have told police that the pickup point was "Old Moulton Road and Moadus Road," but changed his trial testimony when he realized that this location was too far from the location of the shooting to be traversed on foot by petitioner in the 17 or so minutes between the 911 report of the shooting and the cellphone call in which petitioner summoned Paul

---

[7]  Apparently, petitioner contends that the alleged reference to driving the red Camaro was false, as he argues himself that Paul could not have used the Camaro as it lacked working headlights.  As such, one cannot infer that Paul's trial testimony was false simply because it differed from an earlier statement that petitioner himself says had to be false.  He may have lied to police and then testified truthfully at trial.  Certainly the court understands that petitioner contends that the entire story of petitioner calling Paul to pick him up after the shooting is false, and that the discrepancy is offered as proof of Paul's willingness to lie, but the discrepancy alone cannot prove the truth or falsity of either.  Petitioner cannot show that Paul's *trial testimony* was, in fact, perjury.

to pick him up.[8]  Petitioner contends that Paul changed his trial testimony to make the pick up point closer to the shooting location so as to fit the timeline of the telephone calls.

First, the discrepancy over which vehicle Paul drove does not prove that Paul's trial testimony was false.  Although the presentence report says that Paul was driving a red Camaro, it also says that Paul used the Mazda truck to pick up the petitioner after the shooting.  (Doc. 9-4, p. 10 of 98).  It is entirely possible that the reference in the presentence investigation report is an error made by the author of the report, or that it refers to a different time frame than the critical period around the shooting.  The discrepancy simply does not support the inference that Paul's trial testimony was false, particularly since there is no discrepancy as to which vehicle Paul used to pick up petitioner after the murder.  But, further, assuming that Paul testified falsely that he used the borrowed Mazda truck to pick up petitioner after the shooting, when, in fact, he drove a red Camaro with no headlights, the discrepancy seems immaterial to guilt or innocence.  The court fails to see how the *vehicle* Paul used to pick up petitioner after the shooting could have affected the jury's judgment, particularly when petitioner agrees it could not have been the red Camaro without headlights.  Given petitioner's agreement that Paul could not have used the Camaro, the better inference to draw is that Paul truthfully testified at trial that he used the borrowed Mazda truck.

Second, for much the same reason, the discrepancy between the presentence investigation report and Paul's trial testimony about the pick up location does not prove that Paul's trial testimony

---

[8]  The prosecution offered evidence at trial that the first report of the shooting came in on a 911 emergency call at 12:59 a.m., and that call records for the cellphone petitioner was using that night showed a call being placed at 1:16 a.m., which the prosecution contended was petitioner calling Paul to come pick him up.

was false.  Although the presentence investigation report states that Paul told police he picked up

the petitioner at "Old Moulton Road and Moadus Road," there is no proof that this statement in the

report is not simply an error by the author of the report.  Petitioner is not comparing written pretrial

statement by Paul to Paul's trial testimony; he is attempting to compare a post-trial presentence

investigation report to the trial testimony.  Nothing accounts for the possibility that the author of the

report is simply mistaken about what Paul told police.  The discrepancy alone cannot prove that

Paul's trial testimony was necessarily false.

Further, even if false, there is no evidence that the prosecution knew or should have known

that the trial testimony was false.  Petitioner has not produced a contradictory statement by Paul or

other convincing evidence showing that Paul actually told police or prosecutors that the pickup point

was at a different location than he said in his trial testimony, or that they otherwise should have

known his trial testimony was false.

The Eleventh Circuit's decision in *Boyd v. Allen*, 592 F.3d 1274 (11th Cir. 2010), is

instructive.  There, a petitioner presented an affidavit from a witness at his trial, in which the witness

contradicted several points he testified to during petitioner's trial.  Petitioner contended that he was

entitled to habeas relief because of the perjured testimony of the witness.   In affirming denial of

relief, the court said:

> As the district court observed, [petitioner] has not presented anything to establish that
> the prosecution knew or should have known that [the witness] was perjuring himself.
> [Petitioner] says that there is no way he could have known since the state court did
> not allow him to develop the claim, and that he should be allowed an evidentiary
> hearing on this claim. But again, [petitioner] is not entitled to an evidentiary hearing
> when his claims are merely "conclusory allegations unsupported by specifics."
> *Blackledge*, 431 U.S. at 74, 97 S. Ct. 1621.  [Petitioner] has simply asserted that the

24

> prosecution "should have known" that [the witness] had allegedly perjured himself, but has offered nothing to explain how or why the prosecution "should have known" that. Without any "specifics," these kind of conclusory allegations are insufficient to entitle him to a hearing on this issue. *See id.*; *Williams*, 743 F.2d at 1542.

*Id.* at 1308, citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977), and *Williams v. Griswald*, 743 F.2d 1533, 1542 (11th Cir. 1984). The same is true in the instant case. Petitioner has offered no "specifics" from which a reasonable inference can be drawn that the prosecution knew or should have known that Paul's testimony concerning the pickup point was false (if, in fact, it was). The discrepancy between his trial testimony and the presentence investigation report does not authorize such an inference, and, unlike *Boyd*, the witness here has not offered an affidavit to contradict himself. There is no evidence that the prosecution knew of contradictory statements being made by Paul.

The court finds that the petitioner is not entitled to habeas relief on the claim that perjured testimony was knowingly used by the prosecution. The evidence fails to raise a valid inference that any identified testimony was, in fact, false, or that the prosecution knew or should have known it was false. Further, much of the testimony he points to had no material affect on the jury's consideration of the case. This claim is due to be denied as meritless.

### 3. *Claim 3 – Ineffective Assistance of Counsel*

Petitioner has specified 17 different instances of alleged ineffective assistance of his trial counsel, Clint Brown. These are identified as follows:

25

(a) Counsel failed to present exculpatory evidence through trial testimony of Greg Thrower, Ruby Crowder, and Bill Casey;

(b) Counsel failed to obtain cell phone records from State's witness Dennis Eddy;

(c) Counsel failed to view all of the State's evidence;

(d) Counsel failed to interview State's witnesses Robert and Wendy Key;

(e) Counsel failed to call Ruby Crowder as a witness to testify that she had been told that Dewey Paul said that Jones did not commit the crime;

(f) Counsel failed to challenge ballistics evidence and offer expert testimony in favor of the defense;

(g) Counsel failed to assert a *Brady* claim in the motion for new trial after receiving the presentence investigative report;

(h) Counsel failed to request a jury instruction on the effect of a missing link in the chain of evidence;

(i) Counsel failed to seek dismissal of the indictment when State's witness Michael Stewart failed to appear;

(j) Counsel failed to challenge the arrest as illegal;

(k) Counsel failed to preserve issues for direct appeal;

(l) Counsel failed to call Billy Casey as a witness to testify that Dewey Paul stated he knew Jones did not kill the victim;

(m) Counsel failed to call a forensic pathologist to develop favorable evidence regarding entry and exit wounds and the size of projectiles;

(n) Counsel was suffering from a psychological disorder which caused his performance to be deficient during trial;

(o) Counsel had a conflict of interest based upon threats he had received before trial from Dennis Eddy;

(p) Counsel failed to pursue and protect petitioner's Sixth Amendment right to confrontation regarding witness Michael Stewart; and

(q) Counsel failed to move for a mistrial and make an adequate record regarding a weapons charge in Athens, Alabama.

During the Rule 32 proceedings, the trial court found Jones's numerous claims of ineffective assistance of trial counsel to be without merit.   Addressing each of the specifications of ineffectiveness, the trial court made findings of fact and reached a resolution of each, finding all to be without merit.  These findings and conclusions were expressly adopted by the Alabama Court of Criminal Appeals during the petitioner's appeal of the denial of Rule 32 relief.  When the state courts resolve a claim on the merits, such a resolution is entitled to be honored by the federal habeas court, unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  *See Williams v. Taylor*,  529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  This standard of review is strict, and federal courts are required to give "greater deference to the determinations made by state courts than they were required to under the previous law." *Verser v. Nelson*, 980 F. Supp. 280, 284 (N.D. Ill. 1997)(quoting *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir. 1997)).

The state-court determination of an issue will be sustained under § 2254(d)(1) unless it is "contrary" to clearly established, controlling Supreme Court law or is an "unreasonable application" of that law.  These are two different inquiries, not to be confused.  The Supreme Court has explained:

Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."  (emphasis added.)

*Williams v. Taylor*,  529 U.S. 362, 404, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).  A state-court determination is "contrary" to clearly established law in either of two ways:

First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id*. at 405.  Likewise, a state-court determination can be an "unreasonable application" of clearly established law in two ways:

First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407; *see Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001).  Whether the application is "reasonable" turns not on subjective factors, but on whether it was "objectively unreasonable."  The

question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect.

The Supreme Court has explained that § 2254(d) requires that decisions by the state courts "be given the benefit of the doubt," and noted that "[r]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Holland v. Jackson*, 542 U.S. 649, 124 S. Ct. 2736, 2739, 159 L. Ed. 2d 683 (2004).  Moreover, federal courts are not permitted to substitute their own judgment for the judgment of the state court.  The Eleventh Circuit Court of Appeals has noted that federal *habeas* relief is not available "simply because that court concludes in its independent judgement that the state-court decision applied [the governing legal principle] incorrectly." *Ventura v. Attorney General of the State of Florida*, 419 F.3d 1269, 1286 (11th Cir. 2005), quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).  In *Woodford*, the Supreme Court stated that "[a]n unreasonable application of federal law is different than an incorrect application of federal law."  537 U.S. at 24-25.  It has been noted that "[e]ven clear error, standing alone, is not a ground for awarding *habeas* relief" under the "unreasonable application" standard of § 2254(d). *Stephens v. Hall*, 407 F. 3d 1195, 1202 (11th Cir. 2005), citing *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).

In context of ineffective-assistance claims, the deference to the state courts' resolution is "doubly deferential." *Stephens v. Secretary, Florida Dept. of Corrections*, ___ F.3d ___, 2012 WL 1520874 (11th Cir., May 1, 2012) ("[T]his Court must evaluate Petitioner's ineffective assistance of counsel claims '[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard.'" Quoting *Knowles v. Mirzayance*, 556 U.S. 111, 129

29

S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).  Both *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984), and § 2254(d) in AEDPA require a high degree of deference, first,

under *Strickland*, to the decisions made by counsel, and second, under AEDPA, to the state courts'

determination of the reasonableness of counsel's decisions.  The court of appeals has explained:

> Under *Strickland* [petitioner] must make two showings.  First, he must show that his
> counsel's performance was deficient, which means that it "fell below an objective
> standard of reasonableness" and was "outside the wide range of professionally
> competent assistance." *Id.* at 688, 690, 104 S. Ct. at 2064, 2066; *see also Allen v.
> Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 751 (11th Cir. 2010); *Smith v. Sec'y, Dep't
> of Corr.*, 572 F.3d 1327, 1349 (11th Cir. 2009). In deciding whether there was
> deficient performance, courts must review counsel's actions in a "highly deferential"
> manner and "must indulge a strong presumption that counsel's conduct falls within
> the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689,
> 104 S.Ct. at 2065.  To overcome *Strickland's* presumption of reasonableness,
> [petitioner] must show that "no competent counsel would have taken the action that
> his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.
> 2000) (*en banc*).

> The second showing required under *Strickland* is prejudice: the petitioner must also
> show that, but for his counsel's deficient performance, there is a reasonable
> probability that the result of the proceeding would have been different—that is, our
> confidence in the outcome must be undermined by counsel's deficient performance.
> *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

* * *

> [Petitioner's] claims are governed by 28 U.S.C. § 2254, as amended by the
> Antiterrorism and Effective Death Penalty Act of 1996.  *See* 28 U.S.C. § 2254(d).
> A federal court may not grant a petitioner habeas relief on any claim that was
> "adjudicated on the merits" in state court unless the state court's decision was:
> (1) "contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or (2) ... was
> based on an unreasonable determination of the facts in light of the evidence presented
> in the State court proceeding." 28 U.S.C. § 2254(d); *see also Allen v. Sec'y, Fla.
> Dep't of Corr.*, 611 F.3d at 745; *Hammond v. Hall*, 586 F.3d 1289, 1306 (11th Cir.
> 2009).  This is another layer of deference that is added to the one that already exists
> under *Strickland* to protect the performance of trial counsel from overly intrusive

30

> scrutiny. *Harrington*, 131 S.Ct. at 788. The double layer of deference means that the issue is whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.

*Johnson v. Secretary, DOC*, 643 F.3d 907, 928-929 (11th Cir. 2011), citing *Harrington v. Richter*,

___ U.S. ___, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

In reviewing the state courts' resolution of these claims of ineffective assistance, the question

becomes whether the state courts applied the principals articulated in *Strickland v. Washington*, 466

U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland* the United States Supreme Court

established a national standard for judging the effectiveness of criminal defense counsel. "The

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied upon as

having produced a just result." The Court elaborated:

> [F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendants of a fair trial, a trial whose result is reliable.

466 U.S. 687. The performance prong of *Strickland*, the court stated, requires the following:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by

> defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

466 U.S. 688-89.

In *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002), *cert. denied,* ___ U.S. ___, 124 S.Ct. 408, 157 L.Ed.2d 293 (2003), the Eleventh Circuit Court of Appeals elaborated on the *Strickland* performance prong:

> [W]e must bear in mind that the "touchstone of a lawyer's performance under the Constitution" is "reasonableness." *Chandler [v. United States]*, 218 F.3d [1305] at 1319 [(11th Cir. 2000)].  As we have explained:
>
>> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
>> *Waters [v. Thomas]*, 46 F.3d [1506] at 1512 [(11th Cir. 1996)](quoting *White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992)).  Accordingly, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Putman [v. Head]*, 268 F.3d [1223] at 1244 [(11th Cir. 2001)](quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985 (2000). This recognizes that "[t]o uphold a lawyer's strategy, a court 'need not attempt to divine the lawyer's mental processes underlying the strategy,'" but instead must simply determine whether the course actually taken by counsel might have been reasonable. *Id.* (quoting *Chandler*, 218 F.3d at 1315 n.16).

*Id.* at 1314.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. There is a strong presumption that trial counsel's conduct is the result of trial strategy and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Sinclair . Wainwright*, 814 F.2d 1516 (11th Cir. 1987), *citing Strickland,* 466 U.S. at 690. "Counsel's competence ... is presumed ... and the defendant [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). The respondent never acquires the burden of showing competence rather the petitioner must disprove the presumption of competence. *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000), *cert. denied,* 531 U.S. 1204 (2001). Even where an attorney's strategy may appear to be wrong in retrospect, a finding of constitutionally ineffective representation is not automatically mandated. *Baty v. Balcom*, 661 F.2d 391, 395 n.8 (5th Cir. 1981), *cert. denied,* 456 U.S. 1011 (1982). Whether conduct by counsel was a tactical decision is a question of fact. *Collier v. Turpin*, 177 F.3d 1184, 1199 (11th Cir. 1999). Whether the tactic was reasonable, however, is a question of law. *Id*. Counsel's challenged conduct is viewed from counsel's perspective at the time of the conduct. *Strickland*, 466 U.S. at 68; *Collier*, 177 F.3d at 1200. In the absence of evidence to the contrary, this court may assume that counsel's decision was strategic. *Birt v. Montgomery*, 725 F.2d 587, 600 (11th Cir. 1984), *cert. denied,* 469 U.S. 874 (1984). I n reviewing the prejudice prong, the United States Supreme Court in *Strickland* stated:

33

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test, ... and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

* * *

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.  An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like.  A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed.  The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.  It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.  Although these factors may have actually entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry.  Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination.

The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors.  When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had reasonable doubt respecting guilt.

*Strickland,* 466 U.S. at 693-95.

34

With these standards in mind, the court now turns to petitioner's claims and the state courts' resolution of those claims.

(a).  Petitioner's first claim of ineffective assistance alleges that trial counsel failed to use exculpatory evidence from Greg Thrower, Bill Casey and Ruby Crowder.  The state trial court stated about the claim, the following:

> The petitioner alleged that his trial counsel provided ineffective assistance because he failed to use exculpatory evidence that would have come from Greg Thrower, Bill Casey and Ruby Crowder. Having closely reviewed the documents submitted by the petitioner in this matter, the Court finds no statements made by Greg Thrower or Bill Casey or any other specific factual basis for the petitioner's claim that these persons could have given exculpatory evidence during the trial.  Therefore, the alleged constitutional violation relating to Greg Thrower and Bill Casey is a bare allegation without a full disclosure of the factual basis for this claim and is due to be dismissed for failure to comply with Rule 32.6(b) Ala.R.Crim.P.
>
> Included with the petitioner's Rule 32 petition is a handwritten, unsworn statement allegedly made by Ruby Crowder.  This statement says in pertinent part that the State's rebuttal witness, Bernie Sirten, told her after the petitioner's arrest that she did not need to worry because he and the petitioner had been together just before the murder occurred.
>
> At the close of the defendant's evidence during the trial, the State called Bernie Sirten to rebut the petitioner's testimony that he and Sirten had been working on a truck together at about the time of the murder.  Sirten testified that he spent no time with the petitioner on the night of the murder and that he was not even in the area of Decatur, Alabama.  When Sirten finished giving his rebuttal testimony, the State rested and the evidence was closed.
>
> The petitioner clearly did not believe that Sirten would appear for the trial.  Sirten had told his trial counsel weeks before that he wanted nothing to do with the case.  Since it appeared that Sirten would not be a witness for the State, the petitioner's trial counsel had no legitimate reason to call Ruby Crowder as a witness to impeach

35

testimony that had not been given during the State's case-in-chief.  If counsel had tried to get her testimony about Sirten's alleged out-of-court statement before the jury during presentation of the defendant's evidence, it would have been inadmissible on grounds of relevance, materiality and hearsay.  After the close of the State's rebuttal evidence, the petitioner's trial counsel had no legal basis for reopening the defendant's case to offer Crowder's testimony as rebuttal of rebuttal.  The petitioner's counsel as a matter of law cannot be ineffective for failing to offer clearly inadmissible testimony.  The petitioner's Claim 2(A), therefore, has no merit as to the testimony of Ruby Crowder and does not warrant any further proceedings.

(Exhibit A, C. 13-15).

The trial court correctly found that petitioner has offered no evidence that either Greg Thrower or Bill Casey could offer any exculpatory evidence at trial.  While it is alleged in another claim that Casey could have testified that he heard Dewey Paul state that he knew petitioner was not the killer, petitioner has not offered any affidavit or other evidence from Casey to prove this is true.  In any event, Paul was effectively cross-examined at trial, yet the jury still convicted the petitioner.  As for the purported testimony of Ruby Crowder, it amounted to nothing more than rebuttal of a rebuttal witness.  Sirten was called by the state to rebut petitioner's alibi evidence that he was with Sirten at the time of the murder.  Crowder could have done nothing more than testify that Sirten told her that petitioner *was* with him.  While helpful, the state court's conclusion that this would not have changed the outcome of the trial is not objectively unreasonable and is entitled to deference.

(b).  Regarding petitioner's second claim of ineffective assistance, that counsel failed to obtain Eddy's cell phone records, the trial court found:

The petitioner contends that his trial counsel's representation was deficient because he failed to obtain records pertaining to cell phone

36

usage by the State's witness, Dennis Eddy. The petitioner alleges that the phone records "contained obvious discrepancies," and had "been electronically edited at the precise time the State claimed Petitioner used it in the commission of a crime." The petitioner says that it is his belief that the phone records (apparently for more than one cell phone) contained details that would have been detrimental to the State's case.

It is clear to the Court that his claim of ineffective assistance is based on the petitioner's personal beliefs, speculation and conclusions that are unsupported by a disclosure of specific facts to support them. Claim 2(B) is due to be dismissed because it fails to state a valid claim as required by Rule 32.6(b), Ala.R.Crim.P.

(Exhibit A, C. 15). The court agrees that petitioner has wholly failed to point to any evidence beyond his own unsupported speculation about the contents and importance of cell phone records. He has not offered the records, but now contends they would be helpful to him. The burden of proof is on the petitioner (who is represented by counsel) to establish that, in fact, the records would have been important enough evidence that no competent attorney would have foregone them. He has not done so.

(c). Regarding petitioner's third claim of ineffective assistance, that counsel failed to review all of the State's evidence, the trial court found:

The petitioner next claims that his trial counsel provided ineffective assistance because he failed to review all of the State's evidence. This claim is deficient for several reasons: first, it fails to specify in detail the evidence that he contends was not reviewed by his counsel. Second, he fails to explain how or why such alleged failure was prejudicial, except his surmise that something exculpatory might have been found in five boxes of evidence that allegedly were in the State's possession. Again, this is but a bare allegation without specific factual support. Third, from the Court's own observations of counsel's trial performance, he clearly knew about the evidence that

37

would be forthcoming from the State and used what he could to the petitioner's advantage and attempted to discredit the most damaging evidence and testimony.  There is neither factual substance nor legal merit to petitioner's Claim 2(C), and it justifies no further proceedings.

(Exhibit A, C. 16).  This conclusion is not objectively unreasonable and is entitled to deference. There simply is no showing whatsoever that counsel's failure to review the five boxes of evidence caused any prejudice to petitioner's defense.  The trial court correctly applied the *Strickland* prejudice analysis.

(d).  Regarding the petitioner's fourth claim of ineffective assistance, that counsel failed to interview the Keys, the trial court found:

The petitioner claims that his trial counsel was ineffective because he did not interview Robert Key or Wendy Key.  He offers no factual basis for his conclusion that counsel did not interview the Keys in advance of trial.  Even if the Court assumes that the petitioner's trial counsel did not interview them before trial, that failure does not necessarily render his performance substandard or demonstrate prejudice to his client.

The Court has reviewed the transcript of trial counsel's cross examination of Robert Key and the State's direct examination of Wendy Key.  The cross examination of Robert Key was thorough and made several important points for the defense, especially Key's admission that he heard Dennis Eddy and Dewey Paul make threats toward the murder victim earlier on the day of the crime.  The petitioner's defense focused on his alibi and the motivation of others, especially Dennis Eddy, to kill the murder victim.  That the petitioner's trial counsel elected not to cross examine Wendy Key caused no prejudice because she gave testimony that mostly was cumulative of other witnesses' testimony and did not provide any information that was harmful to the petitioner.

38

> The Court finds no deficiency in trial counsel's performance regarding the witnesses, Robert and Wendy Key, as well as no prejudice to the petitioner.   The trial transcript demonstrates conclusively no merit to Claim 2(D), and it is due to be dismissed without further proceedings.

(Exhibit A, C. 16-17).  This conclusion is not objectively unreasonable and is entitled to deference.

Here, again, there is simply no showing that counsel's performance regarding the Keys caused any

prejudice to the petitioner's defense.

(e).  Petitioner's fifth claim of ineffective assistance alleges that counsel failed to call

Ruby Crowder as a witness.  The trial court found:

> The petitioner claims that trial counsel was ineffective because he did not call Ruby Crowder to testify about a statement that Bernie Sirten allegedly had made to her about a statement allegedly made by Dewey Paul to the effect that the petitioner did not commit the murder.  This claim fails for the following reasons: first, the Court finds nothing in the petitioner's pleadings, including the handwritten statement allegedly made by Ruby Crowder on June 27, 2003, that provides a factual basis for this claim.  As such, it is a bare allegation without a factual disclosure that fails to comply with the pleading requirements of Rule 32.6(b), Ala.R.Crim.P.
>
> Second, even assuming that Sirten had made the out-of-court statement to Crowder, she would not have been allowed to give double hearsay testimony about what Sirten said that Paul said.  As noted earlier in this Order, trial counsel cannot be ineffective for failing or refusing to submit inadmissible evidence.  Claim 2(E), therefore, is insufficient from both pleadings and evidentiary standpoints and does not justify further proceedings.

(Exhibit A, C. 17-18).   This conclusion is not contrary to or an unreasonable application of

*Strickland*.   Counsel cannot be faulted for failing to present inadmissible evidence.   Crowder's

alleged testimony on this point is nothing more than hearsay; she cannot testify that Sirten told her the Dewey Paul said something to him.  And this is particularly true when Sirten himself testified and could have been questioned about the alleged statement by Paul.  The state courts' resolution of this claim is due deference.

(f).  The petitioner's sixth claim of ineffective assistance — that counsel failed to challenge ballistics evidence — does not warrant habeas relief.  The state trial court found:

> The petitioner claims that he did not receive effective assistance of trial counsel because he failed to challenge the ballistics evidence and to offer expert testimony in favor of the defense.  Apparently, the gravamen of the petitioner's complaint is that his trial counsel did not hire a ballistics expert to challenge the opinions given by the Department of Forensic Sciences expert about the distances and trajectories of the shotgun blasts fired at the victim.
>
> Claim 2(F) is patently groundless because the petitioner's defense and testimony at trial was alibi – that is, he was not at the crime scene and could not have been the person who fired the fatal shotgun blasts.  Having asserted alibi and taken the position that he did not shoot the victim, the petitioner suffered no prejudice from the State's ballistics evidence.  Such evidence was immaterial to his alibi defense.  Therefore, had his trial counsel spent more time or resources attacking the State's ballistics findings, such efforts would not have changed the outcome of the case.  His decision not to do so was neither substandard nor prejudicial to the petitioner.

(Exhibit A, C. 18-19).  The conclusion that trial counsel's strategic decision to focus on an alibi defense made ballistics evidence immaterial is not contrary to or an unreasonable application of *Strickland*.  Informed strategic decisions are virtually unchallengeable.  It was not professionally unreasonable for counsel to focus the defense on petitioner's denial that he was ever involved in the shooting.  With that defense, it did not matter *how* the shots were fired; what was critical was who

40

fired them.  Further, petitioner has pointed to no ballistics evidence that could have been offered that

would have an exculpatory tendency.  This claim is meritless.

(g).  Regarding the claim that counsel failed to assert a *Brady* violation in the motion

for new trial, the trial court found:

> The petitioner contends that his trial counsel failed to provide
> effective assistance because he did not assert a *Brady* violation in a
> motion for new trial after he received a copy of the Presentence
> Report.  As noted in the Court's findings and conclusions regarding
> Claim 1 above, the petitioner attempts to give evidentiary significance
> to the narrative portion of the Presentence Report that is not
> warranted.  He makes assumptions about purported undisclosed
> exculpatory or impeaching witness statements and derives his own
> legal conclusions about *Brady* violations where there is no factual
> basis for such conclusions.
>
> The petitioner's trial counsel obviously did not interpret the
> Presentence Report in accordance with the "spin" that the petitioner
> now assigns to the offense narrative contained in the Report.  It is not
> incumbent on trial counsel to assert legal arguments, such as alleged
> *Brady* violations, based on assumptions for which there is no known
> evidentiary support.  Claim 2(B) is nothing more than a bare
> allegation of constitutional violations arising from the petitioner's
> unfounded conclusions and is not sufficient to warrant further
> proceedings.

(Exhibit A, C. 19).  This conclusion is not contrary to or an unreasonable application of *Strickland*,

where the essential question is whether no professionally competent lawyer would make the same

decision as defense counsel.  Petitioner's reliance on the presentence investigation report as evidence

indicating the existence of undisclosed statements by various witnesses is factually unsupported.

Petitioner, even with new counsel, has failed to offer proof that, in fact, such undisclosed statements

ever existed.  Not only can counsel not be faulted for failing to pursue a factually unsupported claim,

41

but there is no evidence that petitioner suffered any prejudice because there is no proof that any such statements exist.  The state court resolution is not — in light of the "doubly deferential" standard that applies — objectively unreasonable.

(h).  Petitioner's eighth claim of ineffective assistance — that counsel failed to request a jury instruction on the effect of a missing link in a chain of custody — was resolved by the state courts this way:

> The petitioner further claims that he was denied effective assistance because his trial counsel failed to request a jury instruction on the effect of a missing link in the chain of evidence.  This argument presumably is in reference to the Mossberg shotgun that was admitted into evidence as the murder weapon.  A required premise for this claim to succeed is the validity of the petitioner's factual conclusion that there was a missing link in the chain of evidence.  In its Memorandum Opinion dated May 24, 2002, the Alabama Court of Criminal Appeals reviewed the alleged missing link issue and stated: "... we do not agree that there was a break in the chain of custody." Memo Opinion at p. 6.  If there was no break or missing link in the chain of custody, as the Court of Appeals opined, then the petitioner's counsel had no reason to request an instruction on the effect of a missing link in the chain of evidence.  It necessarily follows that counsel's performance was not deficient and his failure to request a missing link instruction resulted in no prejudice to the petitioner.
>
> Other than merely alleging that trial counsel failed to request a missing link jury instruction, the petitioner in his Petition and other addenda provides no factual allegations to explain why this was substandard or why the outcome of the trial would have been different if a missing link instruction had been given.  He does not even provide an example of such an instruction.  For the additional reason that Claim 2(H) fails to comply with the minimum pleading requirements of Rule 32.6(b), Ala.R.Crim.P., it is due to be dismissed without further proceedings.

(Exhibit A, C. 19-20). This resolution of the claim is not objectively unreasonable. It is not clear what a "missing link" instruction would have added to the jury's consideration of the shotgun beyond the ordinary instruction that they may accept or reject any evidence they find not credible. If the jury had a doubt about whether the shotgun was the murder weapon, based upon some missing link in the chain of custody, they could have rejected the shotgun as evidence probative petitioner's guilt. They did not. Dennis Eddy identified the shotgun as the one given to him by petitioner after the shooting, and forensics evidence linked microscopic scratches and markings on the spent shell casings found at the scene to the gun offered in evidence. Reasonable counsel could have concluded that a missing-link instruction would have made no difference to the jury. In any event, there is no reasonable probability that such an instruction would have changed the outcome of the jury's assessment of the evidence. The claim is meritless.

(i). Regarding petitioner's ninth claim of ineffective assistance, that counsel failed to file a motion to dismiss based on the failure of a state's witness (Michael Stewart) to appear, the state courts found:

> The petitioner contends that his trial counsel rendered deficient professional services because he failed to file a motion to dismiss the indictment when the State's subpoenaed witness, Michael Stewart, did not appear for trial. The Court is aware of no law – that would have entitled him to a dismissal of the indictment because a State's witness failed to appear for trial. Based on the limited testimony from some witnesses about Stewart's alleged connections with the petitioner, Dennis Eddy and others, his testimony would simply have bolstered the State's contention that the petitioner had the murder weapon delivered to Stewart so that he could dispose of it. A few weeks later Stewart turned the shotgun over to the investigators who were following leads toward solving the crime. Given the petitioner's bare allegation without any facts or law to support the same, the

> Court concludes that Claim 2(I) fails to state a claim for which relief
> can be granted pursuant to Rule 32, Ala.R.Crim.P.

(Exhibit A, C. 20-21).  This conclusion is not an objectively unreasonable application of *Strickland*.

Counsel cannot be faulted for failing to perform a useless act.  The trial court correctly noted that

the mere failure of Stewart to appear as a witness would not have mandated the dismissal of the

indictment as there was more than sufficient evidence to prove petitioner's guilt without Stewart's

testimony.  This claim does not warrant habeas relief.

(j).  The claim that trial counsel was ineffective because he failed to challenge

petitioner's allegedly illegal arrest was dealt with in the following manner:

> The petitioner alleges that his trial counsel's performance was
> deficient because he failed to challenge an illegal arrest.  Having
> reviewed the record before it, the Court finds no disclosure by the
> petitioner of a factual basis for this conclusion of law. [This claim]
> likewise is due to be dismissed for failure to comply with the
> minimum pleading requirements set forth in Rule 32.6(b),
> Ala.R.Crim.P.

(Exhibit A, C. 22).  The conclusion that counsel's failure to challenge petitioner's arrest did not

amount to ineffective assistance is not objectively unreasonable.  Even assuming petitioner was

arrested without probable cause, a mere illegal arrest does not vitiate a conviction that follows.

Petitioner has not identified any evidence illegally obtained by virtue of his arrest.  Accordingly,

counsel's failure to make an issue of the arrest resulted in no *Strickland* prejudice to the defense.

This claim is meritless.

(k).  Petitioner's eleventh claim of ineffective assistance alleges that  trial counsel was ineffective in failing to preserve issues for appeal.  The state courts said this about the claim:

> The petitioner claims that his trial counsel's representation was ineffective because he failed to preserve issues for appellate review. Other than the general contention that very few issues were preserved for appellate review, the petitioner recites no particular objections that trial counsel should have made or specific issues that he failed to preserve for appellate review. [This claim] is a bare allegation by the petitioner that his constitutional rights were violated, does not disclose a factual basis for this allegation and does not satisfy the pleading requirements of Rule 32.6(b), Ala.R.Crim.P.

(Exhibit A, C. 23).  It is not clear what claims petitioner contends counsel failed to preserve for appellate review.  As the state court observed, petitioner does not point to any particular claim he contends counsel should have preserved.  It cannot be assumed that petitioner meant for counsel to preserve the claims set out in his Rule 32 petition (or in this habeas petition) because all of those claims, by their nature, accrued *after* the trial.  The alleged *Brady/Giglio* claim, the alleged perjured testimony claims, and the actual innocence claims all are grounded on post-conviction events and could not have been preserved for review on *direct* appeal.[9]  The ineffective assistance claims are themselves necessarily post-conviction claims.  Absent some specification of what claims petitioner alleges that counsel failed to preserve for direct appeal, this claim is meritless, as found by the state courts.

---

[9]  To the extent that petitioner argues that counsel should have filed a motion for new trial asserting the *Brady/Giglio* claim based on reading the presentence investigation report, that claim of ineffective assistance is dealt with elsewhere.

(l).  The twelfth claim of ineffective assistance asserts that counsel failed to call Billy

Casey as a witness.  The state trial court found this about the claim:

> The petitioner argues that his trial counsel violated his right to
> effective assistance by failing to call Billy Casey to testify that he
> heard Dewey Paul say that the petitioner did not kill Howard
> Alexander.  In support of this claim, the petitioner has provided no
> affidavit, deposition or other verified statement from Casey about
> what Dewey Paul allegedly told him and when and where the
> statement allegedly was made.  To survive the minimum pleading
> requirements of Rule 32.6(b), this ground for relief must include a
> factual basis set forth in the Rule 32 petition, amendments thereto or
> addenda filed by the petitioner.  The Court has found no factual basis
> for [this claim], and it is due to be dismissed without further
> proceedings.

(Exhibit A, C. 23).  The state court found this claim meritless on the basis of a lack of evidence

supporting the claim.  The same remains true today — petitioner has offered no evidence that, in

fact, Casey would testify in that way.  During trial, petitioner raised with counsel the question of

calling Casey to rebut Paul's credibility, but counsel made the tactical choice not to do so.  In the

absence of evidence indicating that Casey would have testified as petitioner asserts, counsel's

decision not to call Casey was not professionally unreasonable.

(m).  Petitioner alleges that counsel was ineffective because he failed to call the

forensic pathologist to testify about the angles of the shot fired into the victim.  The trial court found:

> The petitioner claims that he received ineffective assistance because
> his trial counsel failed to call the forensic pathologist to develop
> favorable evidence about entry and exit wounds and the size of
> projectiles.  This claim suffers from the same deficiency – materiality
> – as claim 2(F) discussed at length hereinabove.

46

> [This claim] likewise is frivolous because the petitioner's defense and testimony at trial was alibi – that he was not at the crime scene and could not have been the person who killed Howard Alexander. If he was not present and did not shoot the gun or cause the victim's fatal wounds, as he testified, then how does more evidence about wounds and projectiles help establish that he was at another location when the crime occurred? Such evidence clearly would have been immaterial to his alibi defense. Therefore, had his trial counsel called the forensic pathologist as a witness about entry and exit wounds and projectile size, such testimony would not have changed the outcome of the case. Counsel's decision not to do so was neither substandard nor prejudicial to the petitioner as a matter of law.

(Exhibit A, C. 24). The trial court found that counsel made a strategic decision to concentrate on an alibi defense, which made questions about *how* the fatal shots were fired immaterial to the case. This finding is not objectively unreasonable and it is supported by a reading of the trial transcript. Further, petitioner has not identified how raising questions about the angles of the shots fired or the size of the projectiles would have made a difference in the jury's assessment of charge against him. Contrary to his argument that such testimony would have shown that the victim was killed by more than one weapon and this fact would have eviscerated the prosecutions theory that he was the lone gunman, such is not the case. There was testimony that petitioner *alone* was carrying two shotguns, a Mossberg and a Remington, and a pistol. Thus even if forensic evidence showed two different weapons were used, this does not change the prosecution's theory that he acted alone. He suffered no defense prejudice from counsel's decision to forego offering evidence from the forensic pathologist.

(n). Petitioner claims that counsel was suffering from a psychological disorder that caused his performance to be deficient. On this, the trial court found:

The petitioner claims that his trial counsel was suffering at the trial from a psychological disorder that caused him to be ineffective. In his discussion of this contention, petitioner uses broad catchwords or phrases such as "gross incompetence," "subdued performance" and "weakened performance," but he does not point out any specific facts about the trial that suggest his trial counsel was impaired by some psychological disorder. In fact, he states that he "cannot honestly say that counsel's depleted performance was affected by counsel's" alleged psychological disorder. Nor did the Court, who closely observed and listened to the attorneys and other participants in the trial, have any questions or concerns about counsel's effectiveness being impaired for any reason.

The grounds for relief in a Rule 32 Petition must be clear and specific and must disclose fully their factual basis. The petitioner in [this claim] cites no specific facts that raise a genuine question about his trial counsel's competence and merely invites a fishing expedition about his counsel's mental health that would be a waste of time and resources. [This claim] is due to be dismissed pursuant to Rule 32.6(b), Ala.R.Crim.P., without further proceedings.

(Exhibit A, C. 24-25). In the instant habeas action, petitioner identifies the alleged psychological disorder of counsel as Bipolar Disorder. The state trial court found, based on its own observation of counsel's trial performance, that there was no such disorder that impacted counsel during trial. Petitioner has made no attempt to identify any "clear and convincing evidence" that would overcome this finding of fact. *See* 28 U.S.C. § 2254(e). But even if one assumes that counsel did suffer from Bipolar Disorder during trial, petitioner still must point out specific errors or omissions by counsel that prejudiced the defense, and he has not done that. This claim is meritless.

(o). Petitioner's fifteenth claim of ineffective assistance alleges that counsel had a conflict of interest because he had received threats over his representation of petitioner. The state trial court found the following:

48

The petitioner contends that his trial counsel was ineffective because he had a conflict of interest arising from death threats that he allegedly received before trial.   According to the notarized, but unsworn statement of the petitioner's father, Connie Jones, he says that he spoke to the petitioner's trial counsel on March 21, 2001. During that conversation counsel allegedly stated that while interviewing Dennis Eddy, Mr. Eddy asked him if he was aware that a man in a blue trench coat was watching him.   Trial counsel then allegedly told the petitioner's father that he was intimidated by Dennis Eddy's alleged remark and was concerned for the safety of himself and his family.   This fear, says the petitioner, diminished the fervor with which his trial counsel represented him at trial.

To pursue this claim the petitioner must make a full factual disclosure.   Although he presents a multitude of legal arguments about why he received ineffective assistance of counsel, which are discussed elsewhere in this Order, he does not give specific factual instances or examples of deficient performance by his trial counsel that allegedly were caused by his fear for himself or his family.   Nor does he recite any specific factual instance where trial counsel's alleged fear caused some act or omission that probably changed the outcome of his trial.

The Court observed nothing deficient about trial counsel's zeal, skill and advocacy on behalf of his client during the trial. [This claim] is not factually clear and specific enough to satisfy the minimal pleading requirements set forth in Rules 32.6(b) and 32.7(d) and is due to be dismissed.

(Exhibit A, C. 25-26).  As with the assertion that counsel suffered by Bipolar Disorder, this claim is unsupported by any evidence that the alleged threats (if they occurred) actually impacted counsel's defense of petitioner.  Petitioner must allege specific errors or omissions by counsel that were caused by his fear of the threats.  He has not done so.  Absent "clear and convincing evidence" to rebut the trial court's finding of fact that counsel's performance was not adversely affected, the finding is entitled to deference and presumption of correctness under § 2254.  This claim is meritless.

49

(p).  Petitioner's sixteenth claim of ineffective assistance of counsel alleges that counsel failed to pursue Jones's right to confront Michael Stewart.  The state trial court resolved this claim in the following manner:

> The petitioner claims that trial counsel's performance was diminished because he failed to preserve the petitioner's right of confrontation with regard to Michael Stewart.  As noted with regard to Claim 2(I) hereinabove, the State's evidence tended to show that the petitioner caused the murder weapon to be delivered to Stewart after the crime.  A few weeks later Stewart turned it over to the Decatur police investigators.  Although listed on the State's witness list, Stewart did not appeal for trial.
>
> Other than his legal conclusion that trial counsel allowed his Sixth Amendment rights to be violated "regarding Michael Stewart evidence," the petitioner gives no clear or specific explanation in his Petition about how or why Stewart's failure to testify at trial denied his confrontational rights.  Perhaps he means that Stewart would have provided exculpatory testimony, but he does not disclose any favorable facts that Stewart would have testified about.  In reality, it appears that Stewart's testimony would have been very damaging and would have bolstered some of Dennis Eddy's testimony.  Even if counsel should have compelled the appearance of this State's witness at the trial so that he could be questioned in the jury's presence, the petitioner gives no factual clue as to how he was prejudiced by counsel's failure to do so.  The mere conclusion of a constitutional violation, as suggested in petitioner's Claim 2(R), without a full disclosure of the factual basis therefor is due to be dismissed pursuant to Rule 32.6(b), Ala.R.Crim.P., and does not warrant further proceedings.

(Exhibit A, C. 26-27).  The state trial court's befuddlement over this claim is matched by this court's.  A defendant's Sixth Amendment right to confront the witnesses against him arises only when the witnesses actually appear and testify, not when they are simply listed on the prosecutions's witness list.  Because Stewart did **not** appear and testify, there was not Sixth Amendment right to "confront"

50

him.  If petitioner means this claim to allege[10] that counsel was ineffective because he failed to

secure Stewart's appearance with compulsory process, another and separate Sixth Amendment right,

he has failed to allege what Stewart could have testified to that would have been beneficial to

petitioner.  Counsel cannot be faulted for failing to subpoena a witness who would testify that the

petitioner sent him a murder weapon to dispose of.  This claim is meritless.

(q).  Petitioner's final claim of ineffective assistance alleges that counsel failed to file

for a mistrial based on a reference during cross-examination of petitioner to a weapons charge

pending against him in another county.  The trial court wrote about this claim, the following:

> The petitioner contends that his trial counsel failed to provide
> effective assistance because he did not move for a mistrial and make
> an adequate record when the petitioner was cross-examined about a
> "weapons" charge in Athens, Alabama.    Having reviewed the
> transcript of the State's cross-examination of the petitioner during
> trial, the Court finds that he was not cross-examined about a
> "weapons" charge in Athens, Alabama.   The Assistant District
> Attorney asked this question: "in fact, you possess a [inaudible]
> shotgun with a barrel that was illegal to own, haven't you?"  The
> petitioner's trial counsel immediately objected; no answer was given
> by the petitioner; and the cross-examination was pursued in a
> different direction.  (TR. pp. 561-62)
>
> It is clear, therefore, that the State never got into anything about a
> "weapons" charge during its cross-examination of the petitioner
> because his counsel's timely objection stopped that potential line of
> questioning.  The petitioner's factual contention in Claim 2(S) is
> inaccurate.  What actually occurred during the trial did not justify a
> motion for a mistrial or the making of a record by defense counsel.
> Since there is no genuine issue of material disputed fact, Claim 2(S)
> is due to be dismissed pursuant to Rule 32.7(d), Ala.R.Crim.P.

---

[10]  Because petitioner is represented by counsel in this habeas action, he is not entitled to any
liberal reading of the petition, as would a *pro se* petitioner.

(Exhibit A, C. 27-28).  The state trial court found expressly that even if counsel had moved for the mistrial, it would not have been granted.  As that court noted, and this court agrees, the single, unanswered question did not refer to other pending criminal charges, and it was not a basis for granting a mistrial.

None of petitioner's claims of ineffective assistance of counsel merits habeas relief.  The state court findings of fact and legal resolution of the claims are entitled to deference and presumption of correctness that petitioner has not overcome.  These claims are due to be denied.

### 4.  *Claim 4 – Newly Discovered Evidence*

Erroneously designated as Claim 3(r)[11] is petitioner's allegation that he is entitled to relief based on newly discovered evidence.  Here, petitioner alleges that new evidence from Lynn Early, Eli Felton, and Brian Waters will exonerate him by proving that Michael Stewart and Dennis Eddy committed the murder of Howard Alexander and framed petitioner for it.  He has offered copies of sworn statements by Felton and Waters, and a notarized (but apparently unsworn) statement by Early in support of his allegations.  The substance of each of these statements is that petitioner was framed for the murder of Howard Alexander by either or both Dennis Eddy and Michael Stewart, based upon admissions by both Eddy and Stewart made to the witnesses.

---

[11]  Although this claim is denominated claim (R) under the general heading of claims dealing with ineffective assistance of counsel, it does not allege any deficiency by counsel.  Rather it alleges that newly discovered evidence warrants relief from petitioner's conviction.  Because the claim does not relate to ineffective assistance of counsel, the court has separately designated it as Claim 4.

The state Rule 32 court resolved this claim in the following way:

> The petitioner contends that he has discovered new material facts that require his conviction and sentence to be vacated pursuant to Rule 32.1(e), Ala.R.Crim.P.   Specifically, he refers to what he contends is favorable testimony in statements allegedly provided by Eli Felton, Brian Waters and Danine Owens.[12]
>
> The record contains what purports to be the testimony of Eli Felton that was obtained in question and answer form between two inmates at Limestone Correctional Institute.  Felton alleged that while he was confined in the Morgan County Jail, he met Robert Key and Dennis Eddy.  They allegedly told him that Eddy killed the person who [sic] the petitioner was charged with murdering.   These admissions allegedly occurred about a month before the petitioner's trial.
>
> Brian Waters, an inmate also serving a sentence in the Limestone Correctional Institute, allegedly provided the petitioner with a notarized, but unsworn, handwritten statement.  The essence of his long narrative is that Michael Stewart had a motive to get even with the petitioner, that he (Waters) saw two "Mexicans" deliver a short barrel shotgun to Stewart, that he overheard a conversation among Stewart, Dennis Eddy and his wife about getting their stories right, and that Stewart told him that the petitioner did not kill Howard Alexander, the victim.
>
> *  *  *
>
> The alleged testimonies of Eli Felton and Brian Waters are not set forth in sworn affidavits, are not reliable and do not qualify as newly discovered material facts under Rule 32.1(e), Ala.Crim.P.  Even if Felton's alleged interrogatory answers are accepted by the Court as factual, all they do is impeach the testimony of Dennis Eddy.  Facts that merely amount to impeachment evidence do not qualify as newly discovered material facts.  Rule 32.1(e)(3), Ala.R.Crim.P.

---

[12] Petitioner does not repeat in the instant habeas action that new evidence of innocence can be supplied by Danine Owen.  Instead, he now has added Lynn Early as an exculpatory witness.  Early was not mentioned in the Rule 32 proceedings.

Brian Waters' opinion that Michael Stewart had a motive to get even with the petitioner does not constitute a statement of material fact. Even if it is a statement of material fact, it is cumulative of the petitioner's argument at trial that Stewart and Dennis Eddy set him up to be charged with murder, an argument that the jury rejected. Rule 32.1(e)(2), Ala.R.Crim.P.   Water's story that he saw two "Mexicans" deliver a short barrel shotgun to Stewart, without more, is also immaterial because it does not relate that particular shotgun to the murder.   Also, it is cumulative of other evidence that was admitted at trial about the alleged involvement of "Mexicans" in the killing of Howard Alexander.   Rule 32.1(e)(2), Ala.R.Crim.P. Waters' allegations that he overheard a conversation among Stewart, Dennis Eddy and his wife about getting their stories right and that Stewart told him that the petitioner did not kill Howard Alexander are inadmissible hearsay.  Even if this information had been available and was admitted during the trial, it could have been used only for the impeachment of Dennis and Jennifer Eddy.   Mere impeachment evidence does not justify a finding of newly discovered material facts. Rule 32.1(e)(2), Ala.R.Crim.P.

Finally, as to Claim 3, newly discovered material facts for post-conviction relief purposes must reasonably support the conclusions that the result of the trial probably would have been different had they been known and that the petitioner is innocent of the crime for which he was convicted.  Rules 32.1(e)(4) and (5), Ala.R.Crim.P.  Having presided over the trial of this case and having recently reviewed the transcript of the entire trial, the Court is not satisfied that the allegations made by Eli Felton and Brian Waters – even if they are assumed to be true – reasonably support either one or both of these required conclusions.  The Court, therefore, finds no merit to the petitioner's argument that he has produced newly discovered evidence that entitles him to relief pursuant to Rule 32.1(e), Ala.R.Crim.P.

(Exhibit A, C. 28-31).[13]  Because these statements purport to relate new evidence of innocence, they

do not support a claim for federal habeas relief under § 2254.

---

[13]  The instant habeas claim does not refer to new evidence from Danine Owens.  Apparently the Rule 32 claim did not refer to new evidence from Lynn Early, as does the habeas claim.

At the outset, newly discovered evidence that goes simply to the question of the petitioner's factual guilt or innocence does not support a claim for federal habeas relief. While newly discovered evidence relating to an alleged constitutional defect or error in the state proceedings may warrant further consideration of the constitutional claim, evidence that purports to show simply the factual innocence of the petitioner is not a free-standing ground for habeas relief. The Eleventh Circuit explained in *Swindle v. Davis*, 846 F.2d 706 (11th Cir. 1988), that habeas relief is grounded not on innocence or guilt, but upon the impact constitutional errors have on the fairness of the fact-finding process. Only newly discovered evidence that shows the existence of a constitutional error, beyond mere factual guilt or innocence, can warrant federal habeas relief. The court said:

> The magistrate and district court correctly recognized that federal habeas relief is available on the grounds of newly discovered evidence only where the evidence bears on the constitutionality of the petitioner's detention. *See Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963). Newly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief. *Smith v. Wainwright*, 741 F.2d 1248 (11th Cir. 1984), cert. denied, 470 U.S. 1087, 105 S. Ct. 1853, 85 L. Ed. 2d 150 (1985). Appellant's newly discovered evidence consists of testimony that the victim was killed by another individual in an altercation which followed the appellant's altercation with the victim. This evidence clearly goes to the question of Swindle's guilt or innocence. He concedes that the state was unaware of this evidence at the time of trial and that the state did not solicit false evidence. Thus, the newly discovered evidence does not bear on the constitutionality of appellant's incarceration and this claim does not establish a ground for habeas relief.

*Id.* at 707. In later cases, the Eleventh Circuit has repeated that freestanding claims of actual innocence are not a basis for federal habeas relief, at least in non-capital cases. *See Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital

cases....") citing *Jordan v. Secretary, Department of Corrections*, 485 F.3d 1351, 1356 (11ᵗʰ Cir. 2007).

Subsequent developments in Supreme Court law have not altered this rule.  In *Herrera v. Collins,* 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993), the Supreme Court affirmed the denial of habeas relief on the allegation that newly discovered evidence proved the innocence of a capital defendant.  In doing so, six justices believed or assumed that, upon a truly persuasive showing of actual innocence, habeas relief would be available to prevent the execution of an actually innocent person.[14]  Three justices took the position that habeas relief is not available to relitigate the fundamental question of guilt or innocence.  But due to its splintered opinions, *Herrera* did not establish a constitutional rule allowing newly discovered evidence of actual innocence to support federal habeas relief.[15]  *See In re Davis*, 565 F.3d 810, 817 (11ᵗʰ Cir. 2009); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11ᵗʰ Cir. 2002); *Felker v. Turpin*, 83 F.3d 1303, 1312 (11ᵗʰ Cir. 1996), cert. granted, 517 U.S. 1182, 116 S. Ct. 1588, 134 L. Ed. 2d 685 (1996), cert. dismissed, 518 U.S. 651, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996).  Later, in *Schlup v. Delo,*  513 U.S. 298, 115 S. Ct. 851, 130 L. Ed.

---

[14] Justices Blackmun, Stevens, and Souter dissented from the main opinion, asserting that it would be unconstitutional to execute a provably innocent defendant.  Justice White, concurring in the judgment, "assumed" such a rule existed, as did Justices O'Connor and Kennedy, but who believed the defendant in that case was not provably innocent.  Chief Justice Rehnquist and Justices Scalia and Thomas believed that habeas relief is not available to address questions of factual innocence.  As a result of these splintered opinions, six justices ultimately affirmed the holding of the lower court that petitioner Herrera had not proven actual innocence and was not entitled to habeas relief.  Thus, the discussions and assumptions about the existence of a freestanding claim of actual innocence are nothing but *dicta*.

[15] Discussions of *Herrera* in the opinions in *Schlup v. Delo*,  513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), again assume that such a freestanding claim of actual innocence can render execution of an actually and provably innocence man constitutionally unacceptable.

2d 808 (1995), the Court held that a showing of "actual innocence" can serve as a "gateway" through which an otherwise procedurally barred claim of constitutional error might gain consideration. *Schlup*, 513 U.S. at 315.  The Court drew a distinction between the *Schlup* procedural-gateway claim of innocence and the *Herrera* freestanding substantive claim of actual innocence, stressing the much higher burden of proof a petitioner must meet in the latter situation.  Because *Schlup* dealt with a different constitutional issue, it did not have the occasion to hold that a *Herrera* claim actually exists.

Likewise, Congress's enactment of AEDPA did not alter the Eleventh Circuit rule.  The concept of newly discovered facts appears in two, interrelated places in 28 U.S.C. § 2244.  First, setting the date on which the one-year limitation period for seeking habeas relief accrues and begins to run, § 2244(d)(1)(D) states that the period begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Here, again, however, the operative significance of this provision is that it sets the accrual date for "the claim or claims presented," tying the concept to the requirement of a constitutional error or defect, not merely freestanding innocence.  Likewise, § 2244(a)(2)(B) allows an appeals court to authorize the filing of a "second or subsequent" habeas petition if:

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and
>
> (ii) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, *but for constitutional error*, no reasonable factfinder would have found the applicant guilty of the underlying offense. [Italics added for emphasis].

This is the *Schlup* "gateway" concept of actual innocence — the discovery of new evidence is significant only if it helps to establish a gateway through which a constitutional error gains consideration.

In the instant non-capital case, petitioner's claim of newly discovered evidence of his actual innocence simply does not state a claim for federal habeas relief under Eleventh Circuit precedent. Petitioner does not make the argument that his actual innocence opens a gateway for consideration of another claim; rather, he is quite clear that he argues this evidence proves that he is innocent of the murder of Howard Alexander and should be granted relief on that basis alone. Eleventh Circuit law simply does not recognize a freestanding claim of innocence as a ground for habeas relief.

In any event, petitioner has not made the extraordinarily persuasive presentation necessary to prove factual innocence. The evidence he now proffers purports to be from witnesses who have overheard Eddy and/or Stewart state either that petitioner did not commit the murder or that they did. This does no more than impeach Eddy's testimony in much the same way as petitioner challenged it during trial, where his defense was this very argument — that Eddy and Stewart were framing him to divert attention from themselves. This new evidence does not conclusively establish petitioner's innocence, but raises a credibility contest between the new witnesses (and their motives for testifying) and Eddy and Stewart. The jury has heard and resolved this essential argument against petitioner. Therefore, petitioner's claim for habeas relief based on newly discovered evidence is due to be denied.

5. *Claim 5 – Actual Innocence*

Jones's final claim for relief repeats the contention that he is actually innocent of the murder of Howard Alexander.  For many of the same reasons explained with respect to the previous claim, this claim does not warrant habeas relief.  First, the Eleventh Circuit has not recognized a simple freestanding claim of actual innocence in non-capital cases.  Second, even if it has, the evidence falls far short of proving petitioner's actual innocence.  Third, the state trial court's resolution of this claim is entitled to deference under § 2254(d).  The state trial court found the following:

> The petitioner's final claim is that he is actually innocent as shown by the totality of the circumstances in this case.  At the end of the State's case-in-chief, the petitioner's counsel made a motion for a judgment of acquittal for the reason, among others, that the State's evidence failed to establish his client's guilt beyond a reasonable doubt.  The undersigned denied that motion.  On the appeal of his conviction to the Alabama Court of Criminal Appeals, the petitioner argued that the evidence was insufficient to convict him for murder.  In its opinion issued on May 24, 2002, the Court of Criminal Appeals opined that the State's evidence presented in its case-in-chief established a *prima facie* case of murder.  The appellate court further noted that the evidence, if believed by the jury, was sufficient to support a finding of the petitioner's guilt beyond a reasonable doubt.  Finally, said the Court of Criminal Appeals in its Memorandum Opinion at page 3: "The evidence presented by the State of the appellant's guilt of the murder was strong and convincing."

> The sufficiency of the evidence to support the petitioner's conviction of murder having been addressed by the trial court and on direct appeal, Claim [5] is precluded from post-conviction review by Rules 32.2(a)(2) and (4), Ala.R.Crim.P.  Even if this claim is not precluded, the Court has made a time consuming an painstaking examination of the pleadings, records, documents and statements filed by the petitioner, the transcript of the trial, the case file and the applicable law and does not find a specific and sufficient factual basis for his

claim that he is actually innocent.  Claim [5], therefore, has no merit
and deserves no further proceedings.

(Exhibit A, C. 31-32).  The state courts read this claim as asserting a sufficiency-of-the-evidence

claim, not as either a *Herrera* or *Schlup* claim of actual innocence.  Insofar as petitioner meant it to

be a sufficiency-of-the-evidence claim, it is both procedurally barred and meritless.  The court will

also address it as a *Herrera* claim.[16]

Having reviewed the entire transcript as well as the circuit court and appellate court opinions,

this court cannot conclude that the state court determinations were "contrary to" or an "unreasonable

application" of clearly established Federal law, or that the determinations were an "unreasonable

determination of the facts in light of the evidence presented in the State court."  28 U.S.C. § 2254(d).

The evidence simply does not raise to the extraordinary level necessary under *Herrera* to prove

petitioner's actual innocence of the crime.  Even viewing the newly discovered evidence from Early,

Waters, and Felton along with the evidence from trial, it is clear that there remain credibility choices

the jury resolved against petitioner.  He argued at trial that Eddy was lying to help himself and that

Stewart and Eddy were the real killers.  The jury did not believe it.  There is no new clear forensic

evidence or new eye witnesses to the crime itself that now cast any doubt on the conviction.  An

action for writ of habeas corpus does not serve the purpose of relitigating the issues of guilt and

innocence resolved by a jury.  Thus, the petitioner is not entitled to relief on this claim.

---

[16]  The court sees no need to address it as a *Schlup* claim because petitioner makes no
argument whatsoever that he is seeking consideration of a barred constitutional claim by traversing
the *Schlup* gateway.

<u>Conclusion</u>

Based on the foregoing, the magistrate judge RECOMMENDS that the petition for writ of habeas corpus be DENIED.

Petitioner may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the clerk.  Failure to file written objections to the proposed findings and recommendations contained in this findings and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  <u>IT IS NOT NECESSARY FOR PETITIONER TO REPEAT HIS LEGAL ARGUMENTS.  AS TO THE FACTS, IF PETITIONER DOES RESPOND, HE SHOULD LIMIT HIMSELF TO ADDRESSING THE STATEMENTS OF FACT CONTAINED IN THE REPORT AND RECOMMENDATION TO WHICH HE OBJECTS; THE FILING OF OBJECTIONS IS NOT A PROPER VEHICLE TO MAKE NEW ALLEGATIONS OR PRESENT ADDITIONAL EVIDENCE.</u>  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district

judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

As to the foregoing it is SO ORDERED this the 8th day of May, 2012.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE